## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

The Sawyers and Lerner Building, LLC,

      Plaintiff,

Case No: 2:16-cv-11003
Honorable Denise Page Hood

v.

Auto Club Lamppost, LLC, et al.

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Dkt. No. 102] AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [Dkt. No. 103]

### I.    Introduction

On June 11, 2019, Plaintiff and Defendants filed cross-motions for summary judgment [ECF No. 102, 103]. The motions are fully briefed.

### II.    Background

On October 17, 2005, Defendant Auto Club Lamppost, LLC ("Auto Club") received a commercial mortgage loan from PNC Bank, National Association ("PNC Bank") (one of Plaintiff's predecessors-in-interest) for a commercial flex office building located in the City of Dearborn, Wayne County, Michigan, commonly known as 5225 Auto Club Drive (the "Property"). The total original principal amount of the commercial mortgage loan was $10,250,000.00 (the

"Loan"). The following documents were delivered by Auto Club to PNC Bank in connection with the origination of the Loan (collectively the "Loan Documents", each dated October 17, 2005, unless otherwise noted):

> a. A Promissory Note, in the original principal amount of $10,250,000.00 (the "Note");

> b. A Mortgage recorded October 31, 2005 in Liber 43758, Page 1209, as Document Number 205495255, of the Wayne County Records (the "Mortgage");

> c. An Assignment of Rents recorded October 31, 2005 in Liber 43758, Page 1256, as Document Number 205495260, of Wayne County Records (the "Assignment of Rents");

> d. A Non-Recourse Exception Indemnification Agreement executed by Patrick D. Raye (the "Raye Guaranty");

> e. A Non-Recourse Exception Indemnification Agreement executed by Giancarlo DeAngelis a/k/a John DeAngelis (the "DeAngelis Guaranty"); and

> f. An Environmental Indemnity Agreement executed by Auto Club, Raye, DeAngelis, and PNC Bank.

Pursuant to the Mortgage, Auto Club was to maintain itself as a Single Purpose Entity. Among other things, Auto Club was not to:

> (f) comingle its assets with the assets of any of its general partners, managing members shareholders, affiliates, principals or any other person or entity;…

> (i) enter into any contract or agreement with any general partner, managing member, shareholder, principal or affiliate of Borrower, any Guarantor or any indemnitor, or any general partner, managing member, shareholder, or principal or affiliate thereof, except upon terms and conditions that are intrinsically fair and

substantially similar to those that would be available on an arms-length basis with third parties other than any general partner, managing member, shareholder, principal or affiliate of Borrower, any Guarantor or any indemnitor, or any general partner, managing member, shareholder, principal or affiliate thereof;…

(o) fail to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character in light of its contemplated business operations; or

(p) file or consent to the filing of any petition, voluntary or involuntary, to take advantage of any applicable insolvency, bankruptcy, liquidation or reorganization statute, or make an assignment for the benefit of the creditors.

Dkt. No. 103, Ex. C at §54.

Auto Club consists of two members, Defendants Patrick D. Raye ("Raye") and Giancarlow (a/k/a John) DeAngelis ("DeAngelis"), each of whom owns 50% of Auto Club, of which Raye was the managing member. The purpose of Auto Club was to own and manage the Property. Dkt. No. 103, Ex. H at 32-33.  Raye has been a real estate developer and builder for more than 20 years, and he has developed vacant land, shopping centers, apartment buildings, renovations, and "a lot of residential" homes, and he has managed commercial real estate. *Id.* at 21.

On November 10, 2007, Auto Club entered into a "Management Agreement" with Lamppost, LLC ("Lamppost") to manage the Property. Dkt. No. 103, at Ex. I. Raye signed the Management Agreement both as Managing Member of Auto Club and as Managing Partner of Lamppost.  The Management Agreement is two sentences in length and states as follows:

3

> Lamppost LLC, or its members thru [sic] this LLC, another entity, or an entity to be formed, may charge Auto Club Lamppost LLC, a general management, accounting or administrative fee of 2½% [] to be determined by 2½% of the gross annual income received by the LLC.
>
> Lamppost LLC agrees to defer billing and receipt of fee to a date to be determined or upon final disposition of the specific asset or assets.

Dkt. No. 105, Ex. 1.  Raye testified that, although Lamppost entered into the Management Agreement with Auto Club, Auto Club and Defendant Bloomfield Technology Park, LLC ("Bloomfield Tech") were the managers of the Property. Dkt. No. 103, Ex. H at 41. Raye and DeAngelis each own 50% of Lamppost and Bloomfield Tech.  Raye testified that Bloomfield Tech was compensated for its management of the property as follows:

> Q. ·So what I'm asking is, in this instance you are claiming that you deferred your management fees for approximately ten years, correct?
>
> A. ·Well, we deferred them. Maybe not for the whole ten years. We deferred them until we charged them.

Dkt. No. 103, Ex. H at 63.

Raye testified that he generally charges management fees for the properties he owns and manages, as follows:

> A. It would be – it would depend on – as I said before, depends on the situation. We've owned various properties, and if we felt that we went – I went over and above and they were very very profitable or whatever, I might – through John or I, I might say, well, I want

4

$100,000, or whatever it is, maybe more, because I've done an awful lot of work on a project or something like that.

Q. Ok.

A. Just whenever. If it became apparent there was a hell of a lot of work that went into a project, then I would maybe charge a management fee.

Q. Okay. So were there instances where you had a management agreement that stated a fee would be charged but you decided not to pay yourself that fee?

A. No, I don't think so.

Q. So every time you had a management agreement, you always paid yourself the full management fee.

A. No, I might charge partial or might charge full or might charge none. I said that before. Depending on the situation.

Q.· ·But in every instance in which you had a management agreement, were you paid that full management fee that was due and owing by the owner of the property?

MR. CRONKHITE: Asked and answered. He said sometimes yes, sometimes no.

. . .

A.· That's correct.

Dkt. No. 103, Ex. H at 68.

On November 1, 2015, the Note matured, and all unpaid principal ($8,583,573.59) and interest ($219,796.71) became due and owing. Auto Club did

not pay PNC Bank the total amount of unpaid principal and interest. The Mortgage

defines an Event of Default to include:

> (b) if Borrower fails to pay the entire outstanding principal balance of the Note, together with all accrued and unpaid interest, on the date when due, whether on the Maturity Date (as defined in the Note), or upon acceleration, or on the Prepayment Date (as defined in the Note);

Dkt. No. 103, Ex. C at §18(b). Raye acknowledged that Auto Club defaulted on its

obligation to PNC Bank under the Mortgage when Auto Club could not pay the

full amount upon maturity, *id.* at 74, and it constituted an Event of Default.

On November 23, 2015, Auto Club transferred $109,771.55 from Auto

Club's PNC Bank account to Bloomfield Tech. Dkt. No. 103, Exs. J and K. This

transfer to Bloomfield Tech was allegedly for management fees and made after the

Event of Default. Dkt. No. 103, Ex. H at 98. Raye states that he knew that Auto

Club was in default at the time the transfer was made but wanted to collect his

management fee.

> Q. ·So there was no -- so it was just coincidental. We just decided that there's money in the account, and we'll pay them the management fee that was been deferred -- …

> A. why did I pick that date? I don't know.

> Q. ·No event had occurred to make you say we need to get this money out of the bank account and into Bloomfield Technology Park?

> A. Well, we knew that we were trying to refinance and we knew it was in default. We didn't know the specific dates. But did I want to collect the fees? Yes.

Dkt. No. 103, Ex. H at 101.

On December 3, 2015, Auto Club transferred $140,000.00 from its PNC Bank account to Bloomfield Tech for management fees, and Auto Club knew it was in default. Dkt. No. 103, Exs. H at 102-03, L and M.

Bloomfield Tech had to pay back to Auto Club $9,000.00 on December 9, 2015 because Auto Club did not have the funds to pay its bills after Auto Club transferred $250,000.00 from its own bank account to Bloomfield Tech. Dkt. No. 103, Ex. H at 106, Ex. M. Plaintiff asserts that the transfers from Auto Club to Bloomfield Tech caused Auto Club to become insolvent to the point that Auto Club over-drafted its bank account on December 9, 2015, incurring overdraft protection fees. Dkt. No. 103, Ex. L at 2. Of the $250,000.00 that was transferred to Bloomfield Tech, $50,000.00 was then transferred to Patrick Raye. Dkt. No. 103, Ex. H at 107.

On December 18, 2015, Plaintiff's predecessor in interest, LaSalle Bank, NA, sent a demand letter to Auto Club. Dkt. No. 103, Ex. N. Pursuant to the terms of the Loan Documents, specifically the Assignment of Rents provision (Dkt. No. 103, Ex. D), LaSalle Bank NA demanded that all rents and other income derived from the Property be turned over to LaSalle Bank NA. The demand letter stated: "Failure to do so will result in liability to all persons involved in such diversion of Rents and Cash Collateral to the full extent provided by the Loan Documents and

under applicable law." Auto Club did not turn over rents that were collected until after Plaintiff's predecessor-in-interest filed this action and, along with Auto Club, caused a court-ordered receiver to be put in place.

Regarding the assignment of rents, Raye testified that he could not recall why Auto Club waited until May 20, 2016 to turn over the rents collected from their tenants to the Receiver. He stated that he turned them over but "[p]robably shouldn't have." Exhibit H, 173:13-19. When asked why the rents were not assigned to the lender when initially demanded by Plaintiff's predecessor-in-interest, Raye testified that "We were owed a lot of management fees." Dkt. No. 103. Ex. H at 173. Raye testified that Auto Club did not turn over rents because it felt that, under the Loan Documents, Auto Club and Bloomfield Tech were entitled to their management fees and "shouldn't have paid that amount of money over to [the Receiver] because we felt we were owned more money than that, but we did." *Id.* at 174-75.

On March 18, 2016, Plaintiff filed this action against Auto Club to enforce the Assignment of Rents and appoint a Receiver. On April 22, 2016, the parties entered into the Stipulated Order Appointing Receiver ("OAR"). Dkt. No. 10. In the OAR, the parties agreed that the Receiver would be NAI Farbman (by its agent Michael Kalil). Dkt. No. 10, Paragraph 1.1. Plaintiff's First Amended Complaint was filed on July 28, 2017, when Plaintiff added Bloomfield Tech, Raye, and

DeAngelis to seek recovery under the Note against the Borrower and the Guarantors based on Springing Recourse Liability, and Fraudulent Transfers pursuant to MCL 566.31 *et seq*. Dkt. No. 39.  On June 5, 2019, after being granted leave by the Court, Defendants filed a Counterclaim for Unjust Enrichment. Dkt. No. 101.

### III.   Analysis

### A. Counts I and II: Enforcement of Rents and Appointment of Receiver

Defendants argue that Counts I (Enforcement of Rents) and II (Appointment of Receiver) are moot: (1) based on the OAR; and (2) because Auto Club turned over all income to the Receiver.  Defendants assert that Plaintiff has never alleged, otherwise complained or moved that Auto Club failed to turn over income, nor is there any costs or attorney fee provision in the OAR.

Plaintiff acknowledges that it now holds title to the Property and that the receivership has been terminated, but it contends that the issue of costs and fees remains.  Plaintiff states that the Non-Recourse Exception Indemnification Agreements signed by Raye and DeAngelis, Dkt. No. 109, Exs. E and F, require Raye and DeAngelis to pay all costs and expenses incurred by Plaintiff in conjunction with any collection efforts against Raye and DeAngelis, respectively, including:

> all liabilities, obligations, losses, damages, costs and expenses (including attorneys' fees), causes of action, suits, claims, demands

and judgments which at any time may be imposed upon, incurred by
or awarded against Lender and for which Borrower at any time may
be personally liable pursuant to the Non-Recourse Exceptions (as
defined in the Note).

Dkt. No. 109, Exs. E and F (at Paragraphs 2, 9).

Defendants counter that the Non-Recourse Exception Indemnification
Agreements provide that indemnity to Plaintiff is limited to that "for which
Borrower at any time may be personally liable pursuant to the Non-Recourse
Exceptions (as defined in the Note)." Defendants state that the only Non-Recourse
Exception Plaintiffs cited in their First Amended Complaint was Paragraph 12(e)
of the Note. Defendants argue Paragraph 12(e) is inapplicable in this case because
the management expenses paid by Auto Club to Bloomfield Tech were proper
under the Assignment of Rents. *See* Dkt. No. 105, Ex. 4 at Paragraph 2(c) (". . .
Any Rents received by Assignor after the occurrence of an Event of Default are
received in trust for the benefit of the Assignee, and shall be applied to the actual,
reasonable and necessary expenses of operation, management and maintenance of
the Property; and the payment of the Debt; and Assignor shall account therefor to
Assignee. . . .").

As Defendants represent, Plaintiff has not disputed that Defendants
(Bloomfield Tech) provided management services for the Property prior to the
Event of Default, for which Bloomfield Tech was entitled to the amounts paid by
Auto Club in November 2015. Plaintiff also has not disputed that management

services were provided by Defendants between the Event of Default on November 1, 2015 and the appointment of – and acceptance by -- the receiver, effective April/May 2016.  Plaintiff, however, has contested whether the management fees paid by Defendants to Bloomfield Tech were "necessary, reasonable, and actual" fees, as required by the Assignment of Rents and argues that the payments were fraudulent transfers because Auto Club owed Plaintiff rental income under the Loan Documents at the time it paid the management fees to Bloomfield Tech.

The Court grants Defendants' Motion for Summary Judgment with respect to Counts II.  It is undisputed that a receiver was appointed in April 2016 and the receivership of the Property was terminated on April 24, 2019.  The Court concludes that Count II is now moot.

As to Plaintiff's enforcement of rents claim in Count I, the Court finds that there is a genuine dispute of material fact with respect to whether Defendants paid Plaintiff all of the rental income owed under the Assignment of Rents.  First, it is undisputed that Defendants did not pay Plaintiff the entire amount of rental income on the Property.  Defendants concede that they paid only $581,627.74 out of the $661,362.48 in total rent collected for the applicable 6-month period.  Second, although it is undisputed that the Assignment of Rents allows Defendants to pay "necessary, reasonable, and actual" fees for management services, Plaintiff disputes whether all of  the management fees paid to Bloomfield Tech were

11

"necessary, reasonable, and actual" fees, as required by the Assignment of Rents.[1] For this reason, the Court finds that there are genuine disputes of material fact as to whether Defendants paid too much (or too little) to Bloomfield Tech for management services and whether Defendants paid Plaintiff all of the rental income due under the Assignment of Rents. Defendants' motion for summary judgment is denied as to Count I.

## B. Counts III and IV: Springing Recourse Liability

In Counts III (against Auto Club) and IV (against DeAngelis), Plaintiff seeks to impose springing recourse liability against Defendants. As the Loan Documents make clear, the transactions between Plaintiff and Defendants provided only for non-recourse liability, with limited exceptions – only one of which Plaintiff specifically alleged is applicable in this case. Plaintiff contends that recourse liability is possible because Defendants have "impaired the rights of Lender to enforce the Assignment of Rents by failing to turn over all rents from the Property, in breach of Paragraph 12(e) of the Note."[2]

Defendants argue Paragraph 12(e) is inapplicable in this case because the management expenses paid by Auto Club to Bloomfield Tech were proper under the Assignment of Rents. Defendants state that there is no evidence that they

---

[1] Plaintiff's fraud argument is not applicable to its Enforcement of Rents claim and is addressed below.

[2] In fact, Paragraph 21(e) of the Note is the applicable section because Paragraph 12(e) was superseded by Paragraph 21(e).

impaired the *enforcement* of the assignment of rents and that, upon the filing of this action, Defendants stipulated to an order assigning the rents due to Plaintiff's predecessor-in-interest.  As noted above, however, Defendants did not turn over all the rents collected from the Property to Plaintiff because Defendants withheld and paid Bloomfield Tech for management services provided pursuant to the Management Agreement.

Accordingly, the Court concludes that the limited exception to non-recourse liability claimed by Plaintiff (that Defendants have "impaired the rights of Lender to enforce the Assignment of Rents by failing to turn over all rents from the Property, in breach of Paragraph 12(e) of the Note") is applicable.  For the reasons stated above, the Court concludes that there is a genuine dispute of material fact whether all the rents from the Property that were due to Plaintiff (or its predecessor in interest) were paid.  Accordingly, Defendants are not entitled to summary judgment on Counts III and IV.

## C. Uniform Fraudulent Transfer Act Claims (Counts V-VIII)

Plaintiff alleges three counts of fraudulent transfer, one for each of the transfers from Auto Club to Bloomfield Tech in November 2015 and one for the transfer from Bloomfield Tech to Raye in December 2015.  Under Michigan law, fraudulent transfers are a form of tort:

> Although a fraudulent transfer action is an equitable remedy, it is grounded on a wrong or fraud committed by the debtor. In other

> words, the underlying basis of such an action is a civil wrong, i.e., an
> act committed to hinder creditors' claims. The creditor must prove the
> underlying fraud or wrong before availing itself of the equitable
> remedy. Thus, it follows that fraudulent transfer sounds in tort under
> Michigan law.

*In re Barrocco*, 506 B.R. 482, 486 (E.D. Mich. 2014), citing *Bradley Estate*, 494

Mich. 367, 835 N.W.2d 545, 554 (2013) (noting that "Michigan common law . . .

has likewise recognized this distinction between torts and contracts as the two

types of civil wrongs" and that "when a party breaches a duty stemming from a

legal obligation, other than a contractual one, the claim sounds in tort").

"Generally, under Michigan law, a plaintiff [may] not maintain an action in

tort for nonperformance of a contract." *DBI Investments, LLC v. Blavin*, 617

F.App'x 374, 381 (6th Cir. 2015).  A breach of a contractual obligation cannot

support an action in tort absent the "violation of a legal duty separate and distinct

from the contractual obligation." *Rinaldo's Constr. Corp. v. Michigan Bell Tel.

Co.*, 454 Mich. 65, 83 (1997). *See also Sherman v. Sea Ray Boats*, 251 Mich.App.

41, 52 (2002) ("Michigan case law expressly provides that an action in tort may

not be maintained where a contractual agreement exists, unless a duty, separate and

distinct from the contractual obligation, is established"); *Brewster v. Martin

Marietta Alum. Sales, Inc.*, 145 Mich.App. 641, 666-67 (1985) (when a plaintiff's

cause of action arises from a breach of contractual obligation, the appropriate claim

lies in contract, not in tort, because "[a] relationship did not exist . . . which would

give rise to a legal duty without the enforcement of the contract promise itself");
*Sudden Serv., Inc. v. Brockman Forklifts, Inc.*, 647 F.Supp.2d 811, 816 (E.D. Mich.
2008); *Spizizen v. Nat'l City Corp.*, 2009 WL 3757085, at *5 (E.D. Mich. 2009).

Plaintiff argues that Auto Club was insolvent at the time that the transfers to
Bloomfield Tech were made on November 23, 2015 and December 3, 2015, which
makes them fraudulent transfers pursuant to MCL 566.34(1)(a), and that the
transfer from Bloomfield Tech to Raye also was fraudulent.  Plaintiff asserts that
all the transfers were made with the actual intent to hinder, delay or defraud a
creditor of Auto Club.  Plaintiff cites Raye's testimony that he was aware that Auto
Club was in default on its obligations under the Loan Documents when Raye made
sure that he and his entities were paid the amount Raye believed they were owed.
Plaintiff argues that Raye was aware that, as a result, Plaintiff's predecessor in
interest would not be paid the funds it was owed.

Plaintiff contends that Section 21(a) of the Note provides a Non-recourse
exception where Auto Club "impair[s] the right of Lender to bring suit and obtain
personal, recourse judgments against any person or entity (including Borrower)
relating to any losses sustained by Lender in connection with any fraud, . . ."
Plaintiff also relies on Section 9 of the Non-Recourse Indemnification Agreements.
Section 9 provides that, in the event an attorney is retained to "represent Lender in
any bankruptcy, reorganization, receivership . . . then Indemnitor shall pay all costs

and expenses incurred by Lender in connection therewith, including, without limitation, attorney fees, . . . in addition to all other amounts due thereunder."

Based on those two sections, Plaintiff asserts that it is entitled to judgments against Raye and DeAngelis for the full amount of the fraudulent transfers from Auto Club to Bloomfield Tech and Bloomfield Tech to Raye, as Plaintiff seeks to enforce the Assignment of Rents, the receivership, and the costs associated with the foreclosure of the Property.

Defendants argue that Plaintiff's theory, relying on Section 21(a), has been raised for the first time in Plaintiff's motion for summary judgment. Defendants assert that all of Plaintiffs' prior allegations were based on Section 12(e) [21(e)] of the Note. Defendants note that Plaintiff did not amend its Complaint to claim a violation of Section 21(a), even when it had the opportunity to amend its Complaint. Defendants also argue that Plaintiff has not incurred any losses in connection with the alleged fraud, so Section 21(a) is inapplicable.

Plaintiff contends that its First Amended Complaint relied on the broad language of Paragraph 12 of the Note. Plaintiff argues that Section 21(a) of the Note is incorporated in its allegation that:

> Pursuant to the Guarantees, Guarantors agreed to be personally liable for "all liabilities, obligations, losses, costs and expenses (including attorneys' fees), causes of actions, suits, claims, demands and judgments which at any time may be imposed upon, incurred by or awarded against Lender and for which Borrower at any time may be

personally liable pursuant to the Non-Recourse Exceptions (as defined in the Note).

*See* ECF No. 39 at Paragraph 94 (and 95-96).

Defendants argue that, even if Plaintiff can proceed on his fraudulent transfer claims, there is no evidence that Raye's intent in transferring the money from Auto Club to Bloomfield Tech in November and December 2015 was to defraud Plaintiff. Defendants state that the undisputed testimony of Raye was that he made the transfers to compensate Bloomfield Tech for the management services provided and allowed by the Loan Documents. Defendants argues that Plaintiff's claim that the management fees were not "necessary, reasonable, and actual" does not establish fraud, nor does Plaintiff establish that Auto Club was insolvent when the transfers were made.

Plaintiff claims that, because the transfers were made after Auto Club was in default under the Loan Documents – and made to an insider – the transfers were in violation of the Michigan Uniform Fraudulent Transfer Act. But, as Defendants argue, this does not demonstrate a separate and distinct legal duty of Defendants to Plaintiff. And, the fact that Auto Club was in default does not establish that it was insolvent (nor does the fact that the December 3, 2015 transfer resulted in over-drafting its account).

With respect to each of the transfers at issue, Plaintiff contends that the funds from rents that should have been transferred by Auto Club to Plaintiff

instead were fraudulently conveyed to Bloomfield Tech (or Raye). Plaintiff's contention that it was entitled to such amounts, however, is rooted in the language of the Loan Documents (including the Assignment of Rents), which provide that Auto Club was to pay the rents to Plaintiff's predecessor-in-interest. For that reason, the Court finds that Plaintiff has not established "a duty, separate and distinct from the contractual obligation" of Defendants under the Loan Documents, to pay Plaintiff the rents. Accordingly, the Court finds that, even if there was a fraudulent transfer of the rents collected by Defendants, there was no duty of Defendants independent of the Assignment of Rents to pay Plaintiff such rents. The Court grants Defendants' motion for summary judgment on Plaintiff's Uniform Fraudulent Transfer Act claims (Counts V-VIII).

### D. Defendants' Counterclaim: Unjust Enrichment

Plaintiff argues that none of the Defendants are entitled to management fees – and Defendants' unjust enrichment counterclaim should be dismissed – because the Management Agreement is an illusory contract. Plaintiff states that Defendants were not obligated to pay under that contract, as Auto Club could elect to pay or not, at its option. Relying on *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002). Plaintiff also argues that it was an insider contract that was not commercially reasonable.

The elements of a claim for unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991). In such instances, the law operates to imply a contract in order to prevent unjust enrichment. *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993).   It is undisputed that Defendants managed the Property for a decade, including the five-six month period after the Event of Default in November 2015 until the Receivership began in April/May 2016.  Plaintiff's predecessor-in-interest received rental income during the six-month period following the Event of Default and preceding the Receivership.  It is undisputed that Defendants were not paid for any management services after the Event of Default.

As to outstanding management fees to which Defendants may be entitled, on the one hand, Plaintiff claims that no management fees are owed, but Plaintiff also seems to acknowledge that Defendants were entitled to management fees.  In its reply brief in support of its motion for summary judgment, Plaintiff states that: "all monies held by Auto Club, along with all rents <u>other than those needed to pay necessary, actual, and reasonable fees and expenses to maintain the property</u> were to be assigned to the lender after default." ECF No. 112, PgID 2871 (emphasis added).

Defendants argue that Plaintiff's reliance on contract principles (the absence of consideration or mutuality of obligation) is inapplicable to its unjust enrichment claim, which is based on equitable principles.  Defendant also argues that the Management Agreement is substantive and reasonable because it provides for a 2.5% management fee – which is within the industry norm of 1-5% (according to Plaintiff's representative) and less than the 3.5% charged by the Receiver -- and the ability to defer that fee, which is also customary in the industry (according to Plaintiff's representative).

The Court denies both parties' motions for summary judgment with respect to the unjust enrichment counterclaim.  There is a genuine dispute regarding the volume and value of the management services provided by Bloomfield Tech (and/or other entities or persons associated with Auto Club).

## I.    Conclusion

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment [Dkt. No. 102] is GRANTED IN PART and DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Dkt. No. 103] is DENIED.

IT IS FURTHER ORDERED that Counts II and V-VIII of Plaintiff's Amended Complaint are DISMISSED.

IT IS FURTHER ORDERED that Counts I, III, and IV of Plaintiff's Amended

Complaint and Defendants' Counterclaim REMAIN before the Court.

IT IS ORDERED.

<div style="margin-left: 40%;">

s/Denise Page Hood
DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

</div>

Dated: May 31, 2020