UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

**The Sawyers and Lerner Building, LLC,**

a Kentucky limited liability company,

           Plaintiff,

v.

**Auto Club Lamppost, LLC,**

a Maryland limited liability company,

**Patrick D. Raye**, an individual, **Giancarlo DeAngelis a/k/a John DeAngelis**, an individual, and **Bloomfield Technology Park, LLC,** a Michigan limited liability company,

           Defendants.

Case No: 2:16-cv-11003

Honorable Denise Page Hood

Magistrate Judge David R. Grand

## **PLAINTIFF'S PROPOSED FACTS AND CONCLUSIONS OF LAW**

# FINDINGS OF FACT

1. On October 17, 2005 Defendant Auto Club Lamppost received a commercial loan from PNC Bank for a commercial flex office building located in Dearborn, Wayne County, Michigan, commonly known as 5225 Auto Club Drive (the "Property"). **Raye testimony**.

2. The total original principal amount of the commercial mortgage loan was $10,250,000. **Raye testimony**.

3. Together with the commercial mortgage loan, Defendants Raye and DeAngelis entered into Non-Recourse Exception Indemnification Agreements. **Pl. Tr. Ex. 4, 5; Raye testimony; Stipulations for trial**.

4. Together with the commercial mortgage loan, Defendant Auto Club entered into an Assignment of Rents with PNC Bank. **Pl. Tr. Ex. 3**.

5. The loan between Defendant Auto Club and PNC Bank was a non-recourse loan, with certain non recourse exceptions. **Pl. Tr. Ex. 2; Raye testimony**.

6. Among other provisions, the Promissory Note states:

> Subject to the provisions of this Section, Borrower's liability under this Note, the Security Instrument or the Other Security Documents shall only extend to the Mortgaged Property and other collateral given to secure the Debt, and Lender shall not enforce such liability against any other asset, property or funds of Borrower, provided, however the foregoing shall not…impare the enforcement of the Assignment of Rents executed in connection herewith.

**Pl. Tr. Ex. 1, pp. 10-11, ¶ 21(e)**.

7. Among other provisions, the Mortgage prohibits the borrower to "enter into any contract or agreement with any general partner, managing member, shareholder, principal or affiliate of Borrower, any Guarantor or any indemnitor, or any general partner, managing member, shareholder, principal or affiliate thereof, except upon terms and conditions that are <u>intrinsically fair and substantially similar to those that would be available on an arms-length basis with third parties</u> other than any general partner, managing member, shareholder, principal or affiliate of Borrower, any Guarantor or any indemnitor, or any general partner, managing member, shareholder, principal or affiliate thereof" (emphasis added). **Pl. Tr. Ex. 2, p. 28 ¶ 41(i)**.

8. On November 1, 2015 Defendant Auto Club defaulted on this commercial mortgage loan by failing to pay all remaining unpaid principle and interest. **Raye testimony**.

9. Upon this default, the Assignment of Rents provisions of the Mortgage and the Assignment of Rents agreement became immediately operative, without notice to Defendant Auto Club. **Pl. Tr. Ex. 2, pp. 10-11 ¶ 8; Pl. Tr. Ex., p. 3 ¶ 2(c)**.

10. The Assignment of Rents provision states, in pertinent part, "[a]ny Rents received by Assignor after the occurrence of an Event of Default are

received in trust for the benefit of the Assignee, and shall be applied to the actual, reasonable and necessary expenses of operation, management and maintenance of the Property; and the payment of the Debt". **Pl. Tr. Ex., p. 3 ¶ 2(c)**.

11. Defendant Raye is the managing member of Defendant Auto Club. **Raye testimony.**

12. On November 10, 2007 Defendant Auto Club entered into a contract with Lamppost, LLC to manage the Property (the "Management Agreement"). **Def. Tr. Ex. 15**.

13. The Management Agreement stated that Lamppost or its assigns was to receive a management fee in the amount of 2.5% of the gross rents collected from the Property. **Def. Tr. Ex. 15**.

14. The Management Agreement also stated "Lamppost LLC agrees to defer billing and receipt of fee to a date to be determined or upon final disposition of a specific asset or assets." **Def. Tr. Ex. 15**.

15. Lamppost subsequently assigned the management of the Property to Defendant Bloomfield Technology Park. **Raye testimony.**

16. From the time period of October 17, 2005 through November 2015, Defendant Auto Club Lamppost made no payments of management fees to

either Lamppost or Defendant Bloomfield Technology Park. **Raye testimony**.

17. From Octob12 17, 2005 through November 2015, management fees were being deferred. **Raye testimony**.

18. Annual financial statements, including a balance sheet which shows the assets and liabilities of a company, were provided to Defendant Auto Club's lender. **Raye testimony**.

19. The annual financial statements, including the balance sheet, did not include the accruing debt allegedly owed from Defendant Auto Club to either Lamppost or Defendant Bloomfield Technology Park. **Raye testimony**.

20. During Defendant Auto Club's ownership, Defendant Raye and Defendant DeAngelis received payments from Auto Club on an approximate basis. **Raye testimony**.

21. The near monthly payments made from Defendant Auto Club to Defendant Raye and Defendant DeAngelis ranged from $10,000 per month per partner to in excess of $30,000 per month per partner. **Raye testimony**.

22. If Defendant Auto Club were to have made monthly payments to either Lamppost or Bloomfield Technology Park, the total amount of the near monthly payments from Auto Club to Defendants Raye and DeAngelis would not have decreased. **Raye testimony**.

23. However, if Defendant Auto Club were to have had additional expenses, such as an increased electric bill, the near monthly payments from Defendant Auto Club to Defendants Raye and DeAngelis would have decreased by approximately the amount of the expense. **Raye testimony**.

24. Defendant Auto Club received a 5% management fee from each tenant, payable to Defendant Auto Club annually. **Raye testimony, Pl. Tr. Ex. 9, p. 61;14-17**.

25. This 5% management fee was included in the income of Defendant Auto Club, the net income of which was paid to its owners, Defendants Raye and DeAngelis. **Raye testimony**.

26. After default, on November 23, 2015, Defendant Auto Club transferred $109,771.55 from Auto Club's checking account to Defendant Bloomfield Tech's checking account. **Pl. Tr. Ex. 7, p. 4; Pl. Tr. Ex. 9, p. 100; 2-12; Raye Testimony**.

27. After default, on December 3, 2015, Defendant Auto Club transferred $109,771.55 from Auto Club's checking account to Defendant Bloomfield Tech's checking account. **Pl. Tr. Ex. 7, p. 7; Pl. Tr. Ex. 9, p. 102;19-15, p. 103;1; Raye testimony**.

28. Defendant Auto Club Lamppost consists of two members, Defendant Raye and Defendant DeAngelis, each having a 50% ownership interest in Auto Club. **Raye testimony; Stipulations for trial**.

29. On December 18, 2015 Defendant Raye received a Demand Letter from Defendant Auto Club's lender further requiring Defendant Auto Club assign rents to Lender. **Def. Tr. Ex. 28 p. 3; Raye testimony.**

30. On February 2, 2016 Defendant Auto Club's then lender filed a Statutory Notice of Default with the Wayne County Register of Deeds. **Def. Tr. Ex. 23**.

31. On March 18, 2016 Plaintiff's Successor in Interest filed the Complaint in this matter, to among other things, , Count I, Enforce the Assignment of Rents, and Count II, Appointment of a Receiver. **D.N. 1, Pg ID 1**.

32. On April 22, 2016, the parties stipulated to the appointment of Michael Kalil, agent for NAI Farbman, as Receiver. **D.N. 10, Pg ID 291; Kalil Testimony**.

33. From November 2015 through May 2016, Defendant Auto Club would transfer the full amount of rent paid from their operating account to the operating account of Defendant Bloomfield Tech. **Raye testimony**.

34. Mr. Kalil, an expert in property management and receivership matters, testified that moving money from the operating account to the operating

account of a related entity would likely be indicative of some form of malfeasance. **Kalil testimony**.

35. Mr. Kalil, an expert in property management, testified that in his 23 years in commercial property management, he is not aware of any third party commercial property manager that has entered into a property management agreement that deferred fees to a period uncertain, or until the sale of the subject property. **Kalil testimony**.

36. Kalil, an expert in property management, testified that outside of an exceedingly rare instance, a property management agreement with terms such as those entered into between Defendant Auto Club and Lamppost would not be available from a third-party commercial property management company. **Kalil Testimony**.

37. Not until June 2016, after the commencement of a lawsuit, and the appointment of a receiver, did Defendant Auto Club remit rent to the Receiver. **Pl. Tr. Ex. 11, p. 12; Raye testimony; Kalil Testimony**.

## PROPOSED CONCLUSIONS OF LAW

**A. Plaintiff's Claims for Enforcement of Assignment of Rents and Springing Recourse Liability should be granted.**

38. The Promissory Note and Mortgage are non-recourse unless Defendant violates those provisions enumerated in Section 21 of the Promissory Note. **Pl. Tr. Ex. 1, pp. 10-11 ¶ 21.**
39. To show a breach of contract, the Plaintiff must show: (1) the existence of a contract; (2) a party's breach of the contract, and (3) damages suffered as a result of said breach. *Miller-Davis Co. v. Ahrens Construction, Inc.,* 495 Mich. 161, 178 (2014).
40. There is the existence of a contract between Defendant Auto Club and Plaintiff's predecessor in interest.
41. There has been a breach of contract; Defendant Auto Club failed to hold the rents in trust for Lender by using those funds to pay deferred management fees that were in no way necessary for the current management of the Property as required in the Assignment of Rents. **Pl. Tr. Ex. 3, p. 3 ¶2(c).**
42. Defendants further impaired the enforcement of rents and thus breached Section 21 of the Promissory Note (non-recourse provision), by failing to immediately turn over rents to Lender, transferring funds from the Auto Club operating account to the Bloomfield Tech operating account, and failing to turn over rents until after the Court had appointed a Receiver.
43. Plaintiff has suffered damages in the amount of $249,771.55 in monies that should have been properly assigned to Lender after default.

**B. Plaintiff has not been unjustly enriched at the expense of Defendants for deferred management fees or CAM true-ups.**

44. To prevail on a claim for unjust enrichment, Defendants must, in their counterclaim, show: (1) a receipt of a benefit by the defendant from the plaintiff; and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant. *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 478, 666 N.W.2d 271 (2003).

45. Defendants are unable to show that any inequity resulted as Defendant Raye testified that (1) a 5% management fee was already received from Auto Club's tenants, and (2) Defendants Raye and DeAngelis, 50% owners of Auto Club Lamppost, Lamppost, and Bloomfield Tech already received these deferred management fees through monies paid to them each month by Auto Club. **Raye testimony.**

Respectfully Submitted,

/s/ Michael J. Rock
MICHAEL J. ROCK
MICHAEL J ROCK, PLLC
Attorney for Plaintiff
PO Box 721534
Berkley, MI 48072
micheal.rock@mrocklaw.com
(248)587-7513

Dated: November 9, 2020